USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/14/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
UNITED STATES OF AMERICA                                          :
:
:
:
        -v-                                                       :    16-cr-441 (LJL)
:
ROBERT RUSSO,                                                     :    OPINION & ORDER
:
                Defendant.                                        :
:
------------------------------------------------------------------X

APPEARANCES:

FOR DEFENDANT ROBERT RUSSO:
    Robert M. Baum
    FEDERAL DEFENDERS OF NEW YORK

FOR THE UNITED STATES OF AMERICA:
    Catherine Elaine Ghosh
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**LEWIS J. LIMAN, United States District Judge:**

Defendant Robert Russo moves this Court for compassionate release, pursuant to 18 U.S.C. § 3582(c).

The Court assumes familiarity with the background of this case, which was set forth in this Court's Order of April 3, 2020. (*See* Dkt. No. 51.) In brief, Mr. Russo is a 64 year-old man who is currently incarcerated at the Metropolitan Correctional Center ("MCC"). He suffers from many serious medical ailments that put him at high-risk for contracting COVID-19 and for very serious medical consequences should he contract it. *See* CDC, "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities" (March 23, 2020), available at: https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf ("Correctional and detention facilities can include custody, housing, education,

recreation, healthcare, food service, and workplace components in a single physical setting. The integration of these components presents unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors."). On October 16, 2018, Mr. Russo was sentenced by Judge Batts to a term of imprisonment of 60 months. He is serving that sentence at the MCC for medical reasons. He is now at the tail end of his term of incarceration and is currently scheduled for release on October 6, 2020.

Mr. Russo made his motion to this Court on March 31, 2020, in which he sought release to a halfway house. He is unable to return home because his mother is in her late eighties. Mr. Russo had no plan to ensure that he did not spread COVID-19 that he might have picked up at MCC to others at the halfway house.

In its Order of April 3, 2020, the Court deferred ruling on Mr. Russo's motion for compassionate release pending a decision on his previously-filed application for such release with the Bureau of Prisons ("BOP"). (Dkt. No. 54.) In its Order, the Court noted that it could discern "competing objectives" from the language of Section 3582(c):

> First, the language recognizes that the BOP is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan . . . At the same time, permitting a defendant to seek judicial relief within 30 days of making a request to the facility's warden unquestionably reflects congressional intent for the defendant to have the right to a meaningful and prompt judicial determination of whether he should be released.

(*Id.* at 4.) The Court also highlighted that "the 30-day rule was meant as an accelerant to judicial review." (*Id.* at 5.) In order to receive relevant information from the BOP, and in light of the Government's assurance that the BOP would "endeavor to expedite its response," (Dkt. No. 53), the Court deferred ruling on the motion.[1] The Court ordered the Government to update the Court by

---

[1] The BOP's procedures for implementing 18 U.S.C. § 3582 provide: "In the event the basis of the request is the medical condition of the inmate, staff shall expedite the request at all levels." BOP, "Compassionate Release/Reduction in

noon yesterday on when the BOP would make a final determination on Mr. Russo's application for compassionate release. (Dkt. No. 54 at 5–6.) In the same order, the Court directed counsel for Mr. Russo to submit a proposed modification of Mr. Russo's sentence. (Dkt. No. 51 at 6.)

Yesterday, the Court received the Government's letter. It stated:

> The Government respectfully writes in response to the Court's April 3, 2020 order directing the Government to obtain information from the Bureau of Prisons regarding when the BOP will resolve the defendant's request for compassionate release (Dkt. No. 54). As of the time of the filing of this letter, the Government has been unable to obtain that information from the BOP.

(Dkt. No. 58.) The defendant has submitted a proposed order that would require Mr. Russo to serve the remainder of his sentence at a halfway house. (Dkt. No. 57.) Although the Government reiterated its position that it does not "believe the Court has the authority to act sooner than April 26, 2020, thirty days after the defendant's request to BOP," it also expressed that it "has no objections to the language in the order proposed by the defendant." (Dkt. No. 58.)

The Court can no longer avoid a decision. The question is whether it can grant relief now or whether it must wait 12 days to make a decision. For the reasons that follow, the Court concludes that it has the power to grant relief and can do so under these extraordinary circumstances, notwithstanding that 30 days have not passed from Mr. Russo's request for compassionate release to the warden. However, for reasons explained at the conclusion of this opinion, the Court denies the motion without prejudice.

## Applicable Law

18 U.S.C. § 3582(c) permits courts to modify an imposed term of imprisonment. Specifically, in relevant part,

> The court may not modify a term of imprisonment once it has been imposed except that—

---

Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)," (Jan. 17, 2019), available at: https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

> (1) in any case—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction
>
> > . . .
>
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Section 1B1.13 of the United States Sentencing Guidelines (U.S.S.G.) contains policy statements issued by the Sentencing Commission that pertain to compassionate release. Those policy statements, which have not been amended since the amendment to Section 3582(c), state, in relevant part:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

Application Note 1 to U.S.S.G. § 1B1.13 provides, in relevant part:

> Extraordinary and Compelling Reasons.—Provided the defendant meets the

requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

. . .

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 2 explains:

> For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

Application Note 4 "encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1." It continues:

> The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

As indicated above, U.S.S.G. § 1B1.13 has not been amended since the First Step Act permitted a defendant to move for compassionate release over the objection of the Bureau of Prisons. Some courts have determined that, therefore, "there does not currently exist, for the purposes of satisfying

5

the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020) (citing cases); *id.* ("The only possibly applicable policy statement with respect to such a reduction is U.S.S.G. § 1B1.13 (2018), which by its terms applies only to motions for compassionate release filed by the BOP Director, not motions filed by defendants."). The Court need not decide that issue today because, as will be explained below, Mr. Russo's compassionate release would be consistent with U.S.S.G. § 1B1.13.

## Discussion

**Exhaustion under 18 U.S.C. § 3582(c)(1)(A)**

As noted above, the text of Section 3582(c) provides that "[t]he court may not modify a term of imprisonment once it has been imposed" except upon the earliest of one of three possible events:

(1) "motion of the Director of the Bureau of Prisons"

(2) "motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf"

(3) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."

It is not disputed that none of those three events has occurred here. The question thus arises whether this Court has the power to grant the requested relief. That question has divided the courts in this jurisdiction and elsewhere. *See United States v. Haney*, No. 19-cr-541, Dkt. No. 27, at 3 n.1 (S.D.N.Y. Apr. 13, 2020) (Rakoff, J.) (collecting cases).

Judge Rakoff has already persuasively demonstrated that the Court has the *power* to grant the requested relief. *See id.* at 4-7. The language of Section 3582(c) is not jurisdictional. The Supreme Court has held that unless Congress has "clearly stated that [a] rule is jurisdictional, the Court is obligated to treat it as non-jurisdictional. *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153

(2013). As Judge Rakoff explained, the language of Section 3582(c) makes no mention of jurisdictional elements and the section is not part of the jurisdictional portion of the United States Code, *see United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015). In addition, the Second Circuit has deemed a related provision non-jurisdictional. *See United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013)); *Haney*, No. 19-cr-541, at 5–7. The exhaustion requirement in Section 3582(c) is therefore properly understood as a claim-processing rule, which is a non-jurisdictional rule that "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Thus, "the exhaustion requirement in Section 3582(c)(1)(A) merely controls who—the BOP or defendant—may move for compassionate release and when such a motion may be made. It merely delineates the process for a party to obtain judicial review, not referring the adjudicatory capacity of the courts." *Haney*, No. 19-cr-541, at 6.

Indeed, the Government appears not to disagree. In a letter submitted to another Judge of this Court, it has stated:

> Despite the mandatory nature of Section 3582(c)(1)(A)'s exhaustion requirement, the Government may waive that requirement, if it so chooses, by failing to raise the argument. Although it is not a jurisdictional bar, the exhaustion requirement is a so-called "claims processing" or "case-processing" rule—a rule that seeks "to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011); *see also Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019) (listing examples of claims-processing rules); *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (deadline for Rule 33 motion is a non-jurisdictional, claims-processing rule); *United States v. Taylor*, 778 F.3d 667, 670-71 (7th Cir. 2015) (holding that Section 3582(c) is "a non-jurisdictional case processing rule" because it is outside the jurisdictional provisions of the criminal code and not "phrased in jurisdictional terms") (internal citations omitted) (emphasis added); *United States v. Monzon*, No. 99CR157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (finding that Section 3582(c)(1)(A)'s exhaustion requirement is at least a claims-processing rule). As a "claims processing" rule, the Government may waive enforcement by failing to raise the argument.

*See* Letter Response in Opposition, *United States v. Gentille*, No. 19-cv-590, Dkt. No. 31 (S.D.N.Y. Apr. 6, 2020).

The fact that Section 3582(c)(1)(A) is a claim-processing rule, rather than a jurisdictional one, does not mean that the Court can ignore it. To the contrary, the Supreme Court recently reminded lower courts that claim-processing rules are sometimes "mandatory." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005)). At the same time, however, they are not always mandatory, *id.*, and the Second Circuit has broadly stated that, "[e]ven where exhaustion is seemingly mandated by statute . . . the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019).

In reconciling these seemingly inconsistent dictates, the Court finds guidance from other law regarding waiver, forfeiture, equitable tolling, and affirmative defenses as well as from the language of Section 3582(c). As the Government has admitted elsewhere in response to the wave of Section 3582(c) motions that have hit this Court and others, one key consequence of the section not being jurisdictional is that the Government can waive the affirmative defense of exhaustion. *See, e.g.*, *United States v. Knox*, No. 15-cr-445-12, Dkt. No. 1086 (S.D.N.Y. Apr. 10, 2020); *see also Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017) (claim-processing rules "may be waived"). In essence, and notwithstanding the seeming mandatory language of the statute, it is well-established that the Court modify a sentence upon the earliest one of these *four* circumstances:

(1) When the Director of the Bureau of Prisons has made a motion;

(2) When the defendant has exhausted his administrative remedies with the BOP;

(3) When 30 days have lapsed from the date of the request to the BOP; and

*(4) When the United States Department of Justice agrees that the Court should grant relief.*

The fourth circumstance is not in the statutory language, yet all acknowledge that it gives the Court

power to modify a sentence.

There are consequences that follow. If the right to assert the defense of failure to exhaust can be waived, it can also be forfeited.[2] *See Davis*, 139 S. Ct. at 1849 (courts may excuse such a requirement if "the party asserting the rule waits too long to raise the point") (quoting *Eberhart*, 546 U.S. at 19 (2005)); *E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 512 (2014) (determining that a statutory claim-processing rule was not "an impassable hindrance to [the Court's] adjudication" when the party asserting it "did not press the argument unequivocally" in circuit court). In addition, under a variety of rules, courts have the power to deem an affirmative defense waived (which may be akin to forfeiture in some circumstances). *Cf. Chambers v. NASCO*, 501 U.S. 32, 46 (1991) (discussing courts' "inherent power to impose sanctions for . . . bad-faith conduct"); Fed. R. Civ. P. 37.

The Supreme Court has "reserved whether mandatory claim-processing rules may be subject to equitable exceptions" other than waiver and forfeiture. *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 18 n.3 (2017); *see also Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 717 n.7 (2019) (in the statute of limitations context, finding "no occasion to address whether an insurmountable impediment to filing timely" would allow a court to excuse a claim-processing requirement). The weight of authority suggests that they are. First, the Supreme Court has held that analogous statutory rules containing seemingly mandatory language about when a claim can be brought, such as those dictating the latest date a claim may be brought, are subject to equitable exceptions. For example, in *Holland v. Florida*, 560 U.S. 631 (2010), the Supreme Court stated that "a nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in

---

[2] "The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017). "[F]orfeiture is the failure to make the timely assertion of a right [;] waiver is the 'intentional relinquishment or abandonment of a known right.'" *Id.* at n.1 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation omitted)).

9

favor 'of equitable tolling.'" *Id.* at 645–46 (2010) (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96 (1990)); *Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are 'customarily subject to 'equitable tolling[.]'") (quoting *Irwin*, 498 U.S. at 95). Reading general equitable principles into statutory text, the Supreme Court has held that a statute of limitations can be equitably tolled "if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland*, 560 U.S. at 649).

The Second Circuit itself has stated that a "claim-processing rule" is "subject to equitable considerations such as waiver, estoppel or futility." *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006); *see Fed. Ins. Co. v. United States*, 882 F.3d 348, 361 (2d Cir. 2018) ("Claim-processing rules, much like statutes of limitations, . . . may be subject to equitable tolling doctrines."); *Weitzner v. Cynosure, Inc.*, 802 F.3d 307, 311 (2d Cir. 2015), *as corrected* (Oct. 27, 2015) (determining that the "28-day time limit of FRAP Rule 4(a)(4)(A)(vi) . . . should be considered a 'claim-processing rule,' *which is subject to equitable exception* or waiver") (emphasis added); *Grewal v. Cuneo Gilbert & LaDuca LLP*, 2020 WL 897410 (2d Cir. Feb. 25, 2020) ("We have held that Rule 4(a)'s 28-day deadline is not jurisdictional, but is a 'claim-processing rule' and, as such, its enforcement is subject to waiver, forfeiture, and *other equitable exceptions*.") (citing *id.*) (emphasis added).

At the same time, however, the Court cannot deem any defense subject to an equitable exception, such as tolling, if doing so would be inconsistent with congressional intent. *See, e.g.*, *Young v. United States*, 535 U.S. 43, 49 (2002) (holding that equitable tolling cannot apply if it would be "'inconsistent with the text of the relevant statute'") (quoting *United States v. Beggerly*,

10

524 U.S. 38, 48 (1998)). And more directly to the point, the Supreme Court has stated that, "[o]f 'paramount importance' to any exhaustion inquiry is congressional intent." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Thus, text remains important—not only to grant authority to hear a case (because that is what jurisdiction does) but to answer the question of how that authority may be exercised.

The Court concludes that it can grant the requested relief on its own authority, given the extraordinary circumstances here, and because doing so would not be inconsistent with congressional intent. "[T]he First Step Act did not empower the Government with the sole authority to decide when and under what conditions exhaustion may be waived[.]" *United States v. Smith.*, No. 12-cr-133, Dkt. No. 197, at 10 (S.D.N.Y. Apr. 13, 2020). Section 3582(c) is a distinctive federal statute, unlike those in the cases cited by the Government. It does not reflect unqualified commitment to administrative exhaustion and it does reflect acknowledgement that the judiciary has an independent interest in, and responsibility for, the criminal judgments it is charged with imposing. It has features of an administrative exhaustion requirement and of a timeliness statute. As previously explained by the Court, the plain language of Section 3582(c) evinces congressional intent that a defendant has a right to a prompt and meaningful judicial determination of whether she should be compassionately released, regardless of whether administrative remedies have been exhausted. (Dkt. No. 54 at 4.) There is no other way to read the language giving a defendant the right to make a judicial motion for compassionate release thirty days after making an application to the BOP, without needing to wait for the administrative process to be completed. As Judge Rakoff explained, such a provision is extremely unusual (if not unprecedented) as an element of an administrative exhaustion provision. *Haney*, No. 19-cr-541, at 8–9. It would be ironic, and certainly inconsistent with congressional intent, for the thirty days to serve as a substantial obstacle to

11

effective judicial relief.  *See also* Dkt. No. 54 ("In essence, the 30-day rule was meant as an accelerant to judicial review. The Court is charged with interpreting congressional intent and it would pervert congressional intent to treat it as a substantial obstacle to effective judicial review.").

The same logic that supports reading judicially-crafted equitable tolling into an otherwise clear congressional statute so as to honor congressional intent for claims not to be brought too late, *see Holland*, 560 U.S. at 649, supports doing so to respect congressional purpose for claims to be brought sufficiently early.  In particular, when the movant has been pursuing his rights diligently, the BOP has not been able to satisfy its obligation to act expeditiously (including through appeals) or to assure the Court it can do so, and an extraordinary circumstance, not of the movant's own making, stands as a substantial obstacle to him obtaining the meaningful judicial review that Congress intended, the Court can exercise the power Congress has given it.  *Haney*, No. 19-cr-541, at 11–12.

**Whether Mr. Russo Otherwise Satisfies Criteria for Compassionate Release**

The Court turns to the merits.  As described above, Section 3582 permits the Court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"

Assuming the existence of "extraordinary and compelling reasons," the factors set forth in 18 U.S.C. § 3553(a) would not preclude Mr. Russo's release.  Although the "nature" of Mr. Russo's crimes was serious, a shortening of his time in prison—under the current circumstances—by a mere six months (after he has already served almost 54) would not undermine respect for the law.  18 U.S.C. § 3553(a)(1), (a)(2)(A).  His sentence would still provide just punishment and adequate

deterrence to criminal conduct.  18 U.S.C. § 3553(a)(2)(B).  Although the question is close, the Court cannot say that further incarceration and incapacitation is necessary to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(2)(C).  And although Mr. Russo has a lengthy and discouraging criminal record, he is now almost 65 and evidence from the United States Sentencing Commission suggests that recidivism decreases dramatically with age.  *See* U.S. Sentencing Commission, "The Effects of Aging on Recidivism Among Federal Offenders" 3 (December, 2017), available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2017/20171207_Recidivism-Age.pdf ("Over an eight-year follow-up period, 13.4 percent of offenders age 65 or older at the time of release were rearrested compared to 67.6 percent of offenders younger than age 21 at the time of release.").  Finally, under current circumstances, the need for educational or vocational training does not count in favor of Mr. Russo remaining at MCC.  18 U.S.C. § 3553(a)(2)(D).  Survival, not rehabilitation, has become for now the paramount correctional objective.

Mr. Russo's release would also be consistent with the policy statements of the Sentencing Commission, on the assumption that he is at risk of COVID-19.  He suffers from a number of serious, chronic medical conditions, each of which substantially diminishes his ability to provide self-care in the correctional environment.  It is not disputed that these conditions are serious or that he will not recover from them.  Nor is it disputed that the conditions substantially diminish his ability to provide self-care.  Mr. Russo has required continuous medical treatment during his time in BOP custody.  He has been repeatedly transported out of MCC to receive care and undergo operations at outside hospitals.  One such operation, necessitated by his prostate issues, left Mr. Russo unable to control his urine flow and therefore dependent on diapers.  The current national medical emergency aggravates those medical conditions and further impairs his ability to care for

13

himself.

Thus, the only question remaining was whether "extraordinary and compelling circumstances" exist and whether the Court should exercise its discretion to release Mr. Russo. As the Court was writing this opinion, it was prepared to release Mr. Russo based on the risk of him contracting COVID-19, and subject to a plan that would have kept him in quarantine under BOP supervision for a period of 14 days. No such plan existed at the time the Court first considered Mr. Russo's application and the BOP since has frustrated the Court's expectations that it would be able to speedily complete its review of Mr. Russo's application.[3]

At 4:54 p.m. yesterday afternoon, as this opinion was nearly complete, the Government submitted a letter from the BOP advising that the MCC warden had made a decision on Mr. Russo's request: denying it. Mr. Russo has tested positive for COVID-19. As the circumstances are now, releasing Mr. Russo from the MCC will not provide him with the protection sought by his motion: relief from the risk of contracting COVID-19. There also is no suggestion that the condition is terminal for Mr. Russo. The BOP assures that Mr. Russo is "evaluated by Health Services staff on a daily basis, and has displayed improvement." According to the letter, "[h]e is lucid and oriented." Mr. Russo's story confirms the heart-wrenching reality that every day matters in these cases. The BOP's letter asserts that it is taking "extraordinary measures to contain the spread of COVID-19 and treat any affected inmates."

At this time, the Court cannot say that Mr. Russo—or other federal prisoners—would be

---

[3] In its April 3 Order, the Court explained: "Nothing in the agency's internal procedures for implementing the compassionate release statute suggests that it cannot complete its review process, including any appeal, extremely quickly. See BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The procedures contemplate that the warden should consult an inmate's unit manager, correctional counselor, and other relevant staff (social worker, physician, psychologist, etc.). With today's technology, and particularly at this unique time when no one should be traveling, and given the exigent circumstances presented by this application, such conversations should be able to happen in a day or two. Moreover, relevant medical and disciplinary information is already in BOP's possession." (Dkt. No. 54 at 5 n.1.)

made safer by Mr. Russo's transfer to a halfway house. Indeed, in an email to the Court, Mr. Russo's counsel stated that he believed "Mr. Russo should be released *after his condition improves and he has passed a 14 day waiting period.*"[4]

Accordingly, the Court DENIES WITHOUT PREJUDICE Mr. Russo's motion. This denial is without prejudice to renewal based on, among other possibilities, a deterioration of Mr. Russo's condition, a change in the ability of the BOP to care for him, or any other changed circumstances.

SO ORDERED.

Dated: April 14, 2020
New York, New York

LEWIS J. LIMAN
United States District Judge

---

[4] The "First Step Act was drafted using the word 'may,' not 'must.'" *United States v. Israel*, 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019). "A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition[s]." *Id.* To sum, even though Mr. Russo is eligible for compassionate release, the decision to reduce his sentence—and on what conditions—lies within the Court's discretion.